UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**JESSE CARTER,**

    **Defendant.**

Case No. 1:20-cr-62-1
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant Jesse Carter's Motion for Bond (Doc. 21). In that Motion, Carter asks this Court to release him from custody so that he can be placed into a sober living house. For the reasons more fully discussed below, the Court **DENIES** the Motion and **ORDERS** that Carter remain in pretrial detention.

## BACKGROUND

On March 6, 2020, Cincinnati Police Department officers stopped, searched, and arrested Carter, who had a handgun, ammunition, narcotics, and drug paraphernalia in his possession. At the time, Carter was on parole for a felonious assault conviction dating back to 2015. While detained pursuant to his arrest, Carter was charged by a state Grand Jury. On March 19, 2020, he appeared before the Hamilton County Court of Common Pleas, which released him on bond.

While detained, though, Carter had called a colleague, and law enforcement personnel were listening to that call. Based on that communication, federal agents obtained a warrant to search Carter's car, and, on March 26, 2020, discovered a

machine gun there. The machine gun had a sticker with the term "1%er" on it, which indicates affiliation with a known motorcycle gang. On April 1, 2020, federal agents also searched a residence Carter shared with others and found additional firearms and narcotics, along with a host of items bearing insignias related to the motorcycle gang.

On June 17, 2020, a federal Grand Jury indicted Carter on one Count of Possession by a Prohibited Persson in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 ("Count One"); and one Count of Illegal Possession of a Machine Gun in violation of 18 U.S.C. §§ 922(o), and 924(a)(2) ("Count Two"). Carter came into federal custody on September 16, 2020, with his state criminal case still pending.

The Magistrate Judge, after holding a detention hearing on September 21, 2020, ordered Carter detained pending trial. The Magistrate Judge found "[b]y clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community." (Order of Detention, Doc. 15, #29). The Magistrate Judge stressed that the evidence of dangerousness was significant, noting Carter's: (1) potentially lengthy period of incarceration if convicted; (2) prior criminal history; (3) participation in criminal activity while on parole; (4) history of violence or use of weapons; (5) history of alcohol or substance abuse; (6) lack of stable employment; and (7) prior violations of probation, parole, or supervised release. (*Id.* at #29–30). At that hearing, Carter entered a Not Guilty plea, which the Court accepted.

Carter filed a Motion for Bond on January 26, 2021 (Doc. 21). That Motion makes two principal arguments as to why, under 18 U.S.C. § 3145(b), the Court should revoke or amend the Magistrate Judge's determination. First, Carter seeks release on bond because "the Magistrate Judge's decision was contrary to the decision of the original charging jurisdiction, which determined that bond was appropriate." (Mot. for Bond, Doc. 21, #54). He believes that the State Judge's decision to not impose pretrial detention shows that the Magistrate Judge's determination was not "the least restrictive condition[] to ensure both the safety of the community and the appearance of the defendant," which the Bail Reform Act requires. (*Id.*). Second, Carter contends that his release into a sober living house would negate the factors that the Magistrate Judge cited when ordering pretrial detention. (*Id.* at #55). That is because, among other things, "[a]t a sober living placement, [Carter] would be under strict conditions that would limit his interaction in the community at large." (*Id.*).

The Government opposed Carter's Motion. In short, it argued that Carter "presents a strong danger to the community." (Resp. to Mot. for Bond, Doc. 22, #60). Given the firearms and evidence of gang affiliation in this case, much of which the Government notes that it discovered *after* the state court decided to release Carter on bond, the Government concludes that the facts here warrant pretrial detention. (*Id.*).

## LAW AND ANALYSIS

The default position of the law is that defendants should be released on bond pending trial. *United States. v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). At the same time, the Court must balance the law's concern for the liberty of a potentially innocent defendant with the need to protect the community and preserve the integrity of judicial proceedings. Therefore, if there is no condition or combination of conditions that will both (1) "reasonably assure the appearance of" the defendant at future proceedings, and (2) not "endanger the safety of any other person or the community," a court is to deny pretrial bond. 18 U.S.C. § 3142(e). Here, neither the Government nor the Magistrate Judge stated that Carter's risk of not appearing in Court justified pretrial detention. Thus the Court focuses on the danger, if any, Carter poses to the community.

Defendants may challenge a Magistrate Judge's detention order in front of a District Judge under 18 U.S.C. § 3145(b). That statute permits a court with "original jurisdiction over the offense" to consider "a motion for revocation or amendment" of the Magistrate Judge's detention order. *Id.* Although there seems to be some dispute on the precise standard of review under that statute in the Sixth Circuit, it appears that de novo review for this type of challenge is the majority rule. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1127 (S.D. Ohio 2000) ("In the Sixth Circuit, the district courts have followed various procedures to review a magistrate judge's detention order …. The Majority view appears to favor the district court's *de novo* review of detention orders by magistrate judges."). Given that the Second, Third, Fourth, Fifth, Eighth, Tenth, and Eleventh Circuits have directed district courts to use de novo or

independent review in these circumstances, *see id.* at 1128 (collecting cases), and that the parties offer no contrary authority on this point, the Court adopts the majority rule and applies de novo review here.

"To engage in a meaningful de novo review, the district court must have available the options open to the magistrate." *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985) (en banc). That means the Court reviews a defendant's 18 U.S.C. § 3145(b) challenge to a Magistrate Judge's detention order using the same framework that the Magistrate Judge employs during the initial detention determination. In doing so, the Court may reference the Pretrial Services Report, the original detention hearing, and all briefing submitted to the Court. *United States v. Williams*, No. 2:20cr-142, 2020 WL 6866404, at *4 (S.D. Ohio Nov. 23, 2020). To secure an amendment or revocation of the Magistrate Judge's detention order, a defendant need not present "new information." *Id.* at *3 (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)). Instead, just as with the initial detention hearing, the Government must "prove dangerousness to any other person or the community by clear and convincing evidence." *Id.* (citing *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004)).

In some instances, that standard "is modified … for certain, particularly dangerous defendants … [s]pecifically, when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes" specified either by 18 U.S.C. § 3142(e)(2) or (e)(3). *Stone*, 608 F.3d at 945 (quoting 18 U.S.C. § 3142(e)(3)). This rebuttable statutory presumption in favor of detention "imposes only

a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" *Id.* Still, the statute's rebuttable presumption only applies in limited scenarios—namely, as noted, those outlined in Sections 3142(e)(2) and 3142(e)(3).

Neither party addressed in its briefing whether either section creates a rebuttable presumption here. But at oral argument, the Government asserted that the presumption under 18 U.S.C. § 3142(e)(2) applies, and defense counsel agreed. The Court, though, concludes that is not the case. The rebuttable presumption under § 3142(e)(2) arises only when each of three conditions is met. First, the defendant must have "been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed." 18 U.S.C. § 3142(e)(2)(A). Subsection (f)(1) covers any "crime of violence," among other offenses. *Id.* at § 3142(f)(1). Second, the defendant must have committed that offense while "on release pending trial for a Federal, State or local offense." *Id.* at § 3142(e)(2)(B). Third, the instant offense must have occurred not more than five years after the later of the date of conviction or release from imprisonment for the earlier qualifying offense. *Id.* at § 3142(e)(2)(C). Absent any of these elements, the rebuttable presumption does not apply. Thus, the statute only applies when a "defendant recently committed a serious crime (as defined by Congress) while they were on pre-trial release." *United States v. Hefner*, No. 3-18-CR-00136, 2019 WL 612704, at *2 (E.D. Tenn. Feb. 13, 2019). Rephrased, the statute "draws on a commonsense idea: Fool me once, shame on you; fool me twice, shame on me." *Id.*

6

After reviewing Carter's criminal history, the Court concludes that Carter has not committed an offense that satisfies all three elements under § 3142(e)(2). Only two entries on Carter's criminal history occurred in the last five years: a 2015 felonious assault and the instant offense. Neither happened while Carter was on release awaiting trial for a different offense, or at the very least the Government did not show that they did. Accordingly, neither offense satisfies § 3142(e)(2)(B). In short, Carter's criminal conduct does not implicate the "'fool me once' presumption" that undergirds § 3142(e)(2). *Id.*

Separately, although neither party addresses the rebuttable presumption under § 3142(e)(3), the Court also concludes that no presumption arises under that statute. That section focuses on the charged offenses, and asks whether they fall within any of the identified categories. Here, the two Counts in the Indictment relate only to gun possession under 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 922(o). Neither Count charges a crime listed under § 3142(e)(3).

Absent a rebuttable presumption, the Government must show, by clear and convincing evidence, that Carter poses a danger to another person or the community such that the Court should impose pretrial detention. *Hinton*, 113 F. App'x at 77. The Court evaluates a defendant's dangerousness under 18 U.S.C. § 3142(g). That statute identifies the four factors that the Court "shall … take into account" in making that determination: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the [defendant]"; (3) "the history and characteristics

of the [defendant]"; and (4) "the nature and seriousness of the danger to any person or the community" posed by the defendant's release. 18 U.S.C. § 3142(g).

Despite the information presented in Carter's motion, the Court concludes, applying a de novo standard of review to the Magistrate Judge's decision, that all four factors weigh, indeed weigh strongly, in favor of pretrial detention. First, the Court considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence … or involves … a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The two Counts against Carter both involve firearms, so the first factor points in favor of detention. Next, the Court considers the weight of the evidence against the defendant. *Id.* at § 3142(g)(2). Officers found one of the two firearms in this case, along with ammunition, on Carter's person. That strikes the Court as strong evidence that Carter unlawfully possessed a firearm as a felon. Third, the Court looks at the defendant's "history and characteristics," including criminal history, employment history, previous drug or alcohol abuse, and whether the defendant was on probation, parole, or other release at the time of arrest. *Id.* at § 3142(g)(3). After reviewing Carter's profile outlined in the Pretrial Services Report, the Court finds that his lack of employment, previous criminal history, and issues with substance abuse all cut in favor of pretrial detention, on top of Carter being arrested for the instant offense while on bond. Finally, the Court must evaluate the nature and seriousness of the danger posed by the defendant to any person or to the community. *Id.* at § 3142(g)(4). Looking at Carter's alleged conduct as a whole, which includes carrying ammunition and a

8

firearm as a felon in violation of federal law on top of potential gang affiliation and possession of a machine gun, the Court finds that the fourth factor also weighs against Carter's release. Considering that every § 3142(g) factor goes against Carter, the Court declines to revoke or amend the Magistrate Judge's detention order.

That is not to say that Carter's request for release into a sober living facility totally misses the mark. The Court acknowledges that such an arrangement may address, at least to some extent, Carter's substance abuse issues, lack of employment, and potential to harm the community (at least as compared to being released on his own recognizance). Still, it was not at all clear to the Court that the sober living house that Carter identified has much by way of mandatory oversight. Occupants are apparently free to come and go as they please, and it appears there is no monitoring of their whereabouts or activities (other than by period drug testing) when they are not in the house. Given Carter's demonstrated previous disregard for the law, as well as the evidence regarding gang affiliations, and the concerning nature of the instant charges, the Court finds, based on its review of the § 3142(g) factors, that there is clear and convincing evidence that Carter poses a danger to other persons and the community, at least under the criteria determined by Congress.

One last point. Carter claims that the State Judge's decision to release Carter on bond shows that the Magistrate Judge's decision to impose pretrial detention was not the least restrictive condition to ensure the safety of the community. But having reviewed Carter's case de novo (and under the applicable federal standard), the Court does not agree that the Magistrate Judge's decision to depart from the State Judge's

9

determination warrants granting Carter's Motion. What is more, the Government rightly notes that federal officers discovered additional evidence of Carter's gang affiliations *after* the State Judge granted bond. So the Court is not persuaded by Carter's reliance on the State Judge's grant of bond to support the Motion at issue.

## CONCLUSION

For the reasons above, the Court **DENIES** Carter's Motion for Bond (Doc. 21).

**SO ORDERED.**

February 23, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**