UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.      Case No. 1:20–cr-62
        JUDGE DOUGLAS R. COLE

**JESSE CARTER,**

    **Defendant.**

### OPINION AND ORDER

This cause is before the Court on Defendant Jesse Carter's Motion for Acquittal and for a New Trial (Doc. 90). For the reasons below, the Court **DENIES** Carter's Motion.

### BACKGROUND

The operative Superseding Indictment (Doc. 55, #494–95) in this case charged Carter with one count of Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1) ("Count One"), and one count of Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) ("Count Two"). On May 10, 2022, a jury found him guilty on both counts following a five-day trial. Carter now moves to set aside those convictions, or in the alternative for a new trial.

The evidence at trial showed that on March 6, 2020, Carter drove a car through a red light. Police officers stopped and searched the car and found a nine-millimeter Taurus pistol and 428 rounds of ammunition within arm's reach of the driver's seat. The officers also found various other tools and paraphernalia associated with guns,

including a backpack behind the driver's seat that contained an AR-15 armorer's wrench. Carter's comments to the officers during the stop included telling them he wished he had taken them on "a motherfucking high-speed chase and a shootout." Carter also hinted he was worried the officers might find something else in the car, asking "Did you find it?" and later stating "that's all the stuff you'll be finding." Because Carter had previously been convicted of a felony, he could not legally possess a firearm or ammunition. Accordingly, officers arrested and jailed Carter, and impounded the vehicle.

The next day, March 7, 2020, Carter phoned a friend from jail. While speaking on a recorded line, he asked for help to get his "shit" out of the car the officers had searched. The friend asked Carter what weapon the officers had found in the car. Carter indicated that they had discovered "the 9," but that "the big one" was still "behind the subwoofer."

A couple of weeks passed before officers listened to the recorded conversation. When they did so, however, the officers decided to search the car anew. During the intervening time, though, the car had been released from impound to Carter's ex-girlfriend (whom the title listed as the vehicle's owner). Accordingly, on March 26, 2020, officers traveled to her residence in Indiana to search the car. And sure enough, they found a disassembled homemade machinegun behind the subwoofer, the very location that Carter had mentioned on the call.

The machinegun had been tooled and manufactured on an AR platform. At trial, government witnesses testified to externally visible features that showed this

second weapon was a machinegun. These included an auto-sear and pin-selector switch that show a weapon can fire in a fully automatic fashion. Government witnesses also testified that the Taurus pistol and ammunition had been manufactured outside the state of Ohio.

At the close of the government's case-in-chief, Carter moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 as to all elements of both counts. (Tr., Doc. 91, #1018). The Court denied Carter's motion. (*Id.*). Carter renewed his Rule 29 motion at the close of evidence, again moving as to all elements of both counts, but specifically arguing that the government provided no evidence that Carter knew the essential characteristics that made the second weapon a machinegun. (*Id.* at #1019). The Court denied the motion, finding that a jury could reasonably infer from the visible features of the second weapon that a person who possessed it would know of its status as a machinegun. (*Id.* at #1020).

On May 23, 2022, Carter filed the instant Motion. Carter again argues under Rule 29 that the evidence was insufficient to support his convictions as to both counts of the Superseding Indictment. (*See* Mot., Doc. 90, #1010). In the alternative, Carter moves for a new trial as to the second count charging him with possessing a machinegun. (*Id.*). Carter argues that the government failed to prove beyond a reasonable doubt either that he possessed the second weapon or that he knew the essential characteristics that made it a machinegun. (*Id.* at #1015).

3

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 requires a court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In assessing the sufficiency of evidence to sustain a conviction, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Accordingly, a defendant's burden on a Rule 29 motion "is very heavy because the reviewing court does not judge the credibility of witnesses or weigh evidence, and it draws all reasonable inferences in the government's favor." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005). "Circumstantial evidence alone, if substantial and competent, may sustain a conviction under this deferential standard of review." *United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004).

Federal Rule of Criminal Procedure 33 empowers a court to "vacate any judgment and grant a new trial if the interest of justice so requires." The interests of justice require a new trial "if a verdict is against the 'manifest weight' of the evidence." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). Unlike on a Rule 29 motion, which requires that the court view the evidence in the light most favorable to the government, in assessing the manifest weight of the evidence for Rule 33 purposes, "the trial judge … take[s] on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *Id.* Nevertheless, a new trial is appropriate "only in the

4

extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (internal quotation marks omitted).

## LAW AND ANALYSIS

**A.     The Evidence Was Sufficient To Convict Carter As To Count One.**

Count One of the Superseding Indictment charged Carter with possessing a firearm as a prohibited person. (Doc. 55, #494). To prove Carter guilty of this offense, the government had to establish each of the following elements beyond a reasonable doubt: (1) Carter had been convicted of a crime punishable by imprisonment for a term of more than one year; (2) Carter knowingly possessed a firearm or ammunition; (3) when he possessed the firearm or ammunition, Carter knew that he had been convicted of a crime punishable by imprisonment for a term of more than a year; and (4) the firearm or ammunition had been shipped or transported in interstate commerce. *See* 18 U.S.C. § 922(g)(1); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019).

Here, the parties stipulated that on March 6, 2020, Carter had already been convicted of a crime punishable by imprisonment for more than a year and knew that was the case, satisfying the first and third elements. (*See* Jury Instrs., Doc. 89, #985). As to the fourth element, government witnesses testified that the pistol and ammunition were manufactured outside Ohio. That satisfies the interstate commerce requirement. *See United States v. Pedigo*, 879 F.2d 1315, 1319 (6th Cir. 1989). As to the second element, video footage and the testimony of law enforcement officers

5

showed that the Taurus pistol and ammunition were recovered from the car that Carter was driving and were within arm's reach of the driver's seat. Carter's reference to "a shootout" during the stop also suggests that Carter understood the pistol and ammunition to be available for his use. And Carter's call to his friend asking the friend to retrieve his "shit" from the car shows that at least some of the contents of the car were Carter's possessions, thereby further supporting the conclusion that the pistol and ammunition belonged to Carter. Because there was sufficient evidence from which a reasonable jury could conclude that the government had proven each element of Count One beyond a reasonable doubt, the Court **DENIES** Carter's Motion for Acquittal (Doc. 90) as to Count One.

**B.     The Evidence Was Sufficient To Convict Carter As To Count Two.**

Count Two of the Superseding Indictment charged Carter with possessing a machinegun. (Doc. 55, #494–95). To convict Carter on Count Two, the government had to prove (1) that Carter knowingly possessed a machinegun; and (2) that Carter knew the essential characteristics that made it a machinegun. *See* 18 U.S.C. § 922(o); *see also Staples v. United States*, 511 U.S. 600, 619 (1994).

As to the first element, there was sufficient evidence that Carter knowingly possessed the machinegun found in the car on March 26, 2020. Officers had apprehended Carter driving the same car mere weeks earlier, and Carter had asked them "Did you find it?" and later asserted "that's all the stuff you'll be finding." The jury could have understood these statements as a veiled reference to the machinegun that the officers eventually did find in the car weeks later, and could thereby have

6

inferred both that the machinegun was already present in the car on March 6, 2020, and that Carter knew this was the case. Moreover, Carter's recorded call from jail also referred to "the big one" in the context of asking for help getting his "shit" out of the car. The jury was entitled to understand this as another coded reference to the machinegun and to conclude that Carter possessed the machinegun on March 6, 2020, because he knew that it was in the car and could be available for his use.

As to the second element, government witnesses testified to the features of the machinegun that would have indicated its ability to fire automatically. There was also ample evidence that Carter was familiar with firearms, including his possession of the pistol, ammunition, gun paraphernalia, and armorer's wrench for an AR-15, the kind of weapon that was transformed into the machinegun in this case. *See United States v. Morgan*, 216 F.3d 557, 567 (6th Cir. 2000) (affirming machinegun possession conviction where firearm had installations used to convert it to automatic weapon and defendant had substantial knowledge of firearms). The jury could also infer from Carter's coded reference to "the big one," as contrasted with his more explicit mention of "the 9," that Carter knew that possessing the second weapon was more serious because it was a machinegun. The jury could have drawn a similar inference from Carter's apparent concern that the officers would find the machinegun at the March 6, 2020, traffic stop. Because the evidence was sufficient to convict Carter of illegal possession of a machinegun, the Court **DENIES** Carter's Motion for Acquittal (Doc. 90) as to Count Two.

**C.     Carter's Conviction On Count Two Was Not Against The Manifest Weight Of The Evidence.**

In addition to challenging the sufficiency of the evidence, Carter also moves for a new trial as to Count Two, arguing that his conviction on Count Two was against the manifest weight of the evidence. For many of the reasons already discussed above, the Court disagrees. The evidence at trial was that on March 6, 2020, Carter already appeared concerned that officers would discover something more than the pistol and ammunition they found, and was then relieved when they failed to do so. Carter's call from jail showed that there was a "big one" in the car that the officers had failed to find, and that it was "behind the subwoofer." Using that tip, the officers located the machinegun with whose possession the Superseding Indictment charged Carter. That machinegun had visible features indicative of its status, especially to a person like Carter who had substantial familiarity with firearms.

Carter nevertheless argues that the jury's conclusion as to both elements of machinegun possession was against the manifest weight of the evidence. As to the first element, that he knowingly possessed a machinegun, Carter argues that the government failed to prove its constructive possession theory because unlike his other "shit," Carter never specifically asked his friends to take the machinegun out of the car. (Mot., Doc. 90, #1013–14). But as discussed above, the jury could have concluded that the machinegun was present in the car that Carter was driving on March 6, 2020—a car his own words indicated contained his "shit"—and that Carter knew that was the case. Based on the evidence discussed above, the jury could thus have concluded that Carter "knowingly ha[d] the power and the intention … to exercise

8

dominion and control over [the machinegun], either directly or through others," *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), even though Carter did not say "Can you please take my machinegun out of the car?"

Carter also argues that the jury's conclusion as to the first element of machinegun possession was against the manifest weight of the evidence because the only fingerprint lifted from the machinegun did not belong to Carter. (Mot., Doc. 90, #1014). But even accepting that the fingerprint is evidence that someone else also possessed the machinegun, that would not defeat a jury's otherwise supported conclusion that Carter did so as well. *See Craven*, 478 F.2d at 1333 (possession "need not be exclusive but may be joint").

As for the second element of machinegun possession, Carter argues that the testimony of government witnesses is insufficient to establish his knowledge of the essential characteristics of the machinegun because those witnesses could only classify the weapon as a "suspected" machinegun based on their visual inspection and needed to do an examination to confirm their suspicions. (Mot., Doc. 90, #1011–13). But the officers' initial identification of the second weapon as a suspected machinegun makes it more likely that Carter knew it was a machinegun too. The mere fact that the officers then examined the firearm pursuant to their protocols does not negate that inference. That is especially so when considering the machinegun's features in combination with the evidence of Carter's familiarity with guns and veiled references to the second weapon both during the traffic stop and in his subsequent phone call.

9

Because the jury's conclusion as to Count Two was not against the manifest weight of the evidence, the Court **DENIES** Carter's Motion for New Trial (Doc. 90).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Carter's Motion for Acquittal and for a New Trial (Doc. 90).

**SO ORDERED.**

July 18, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**